UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| K & B Louisiana Corp. | Civil Action No. 6:16-CV-503 |
| versus | Judge Rebecca F. Doherty |
| Caffery-Saloom Retail, L.L.C., et al. | Magistrate Judge Carol B. Whitehurst |

### REPORT AND RECOMMENDATION

Pending before the Court are: (1) a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), filed by Defendant Southwest Property Management, Inc. ("Southwest Property") (Doc. 15); (2) a Memorandum in Opposition, filed by Plaintiff K & B Louisiana Corp. ("K&B") (Doc. 24); and (3) Southwest Property's Reply (Doc. 28). Southwest Property's motion was referred to the undersigned for ruling, and oral argument was conducted on January 18, 2017. For the following reasons, the undersigned recommends that Southwest Property's motion be granted.

### *I. Background*

On January 23, 1995, K&B executed a lease ("Lease") with Caffery Center, LLC ("Caffery Center"), which offered an initial 20-year term beginning on August 1, 1996, and six successive five year renewal terms regarding certain commercial property in the Caffery Center Shopping Center ("Shopping Center"). (Doc. 1-1 at

¶¶ 7, 9; Doc. 24-1.) K&B entered the lease for the purpose of operating a retail drug store known as Rite-Aid. (Doc. 1-1 at ¶ 10.) K&B has operated this store until its lease expired on July 31, 2016. (Doc. 1-1 at ¶ 29.)

The Lease contains several conditions precedent and continuing, including a representation by the Lessor that it had entered into a lease with Winn-Dixie Louisiana, Inc. ("Winn-Dixie"), for a minimum of 20 years and for at least 50,000 square feet of space in the Shopping Center in which Winn-Dixie was to operate a supermarket grocery store. (Doc. 1-1 at ¶ 12.) The Lease was amended on November 3, 1995, to provide that should Winn-Dixie "fail, cease or operate, lease or pay rent for its leased premises in the Shopping Center, the Lessor shall have a period of six (6) months to replace Winn-Dixie with a comparable supermarket grocery store of comparable size, net worth and reputation before [K&B] could either cancel its lease or invoke the default provisions of the Lease." (Doc. 1-1 at ¶ 15.)

Pursuant to the terms of the Lease, Lessor was obligated to immediately notify K&B in writing Plaintiff of Winn-Dixie's failure during the primary term of the Lease. (Doc. 1-1 at ¶ 16.) Any such failure on the part of the Lessor to make the proper notification would not deprive K&B of any available remedies under the Lease. (Doc. 1-1 at ¶ 16.) The default remedies under the Lease "include liquidated

damages for the period of time that Defendants violated the terms of the Lease by failing to replace Winn-Dixie with a comparable supermarket grocery store of comparable size, net worth and reputation during term of Plaintiff's Lease." (Doc. 1-1 at ¶ 25.) Liquidated damages is defined under Article 20 of the Lease as the reduction of half of monthly rental and a percentage of additional rental. (Doc. 1-1 at ¶ 26, Doc. 24-1 at p. 30.)

In 1996, Caffery Center assigned its interest in the Lease to Defendant American National Insurance Co. ("American National"). (Doc. 1-1 at ¶ 17.) K&B alleges that Winn-Dixie ceased to operate its supermarket grocery store sometime in 2005. (Doc. 1-1 at ¶ 19.) On April 27, 2010, Southwest Property became the property manager for the Shopping Center, which includes K&B's leased premises. (Doc. 1-1 at ¶ 18.) According to K&B, neither American National nor Southwest Property notified Plaintiff in writing that Winn-Dixie had ceased to operate its supermarket grocery store in the Shopping Center. (Doc. 1-1 at ¶ 20.) In 2014, American National sold the Shopping Center, including K&B's leased premises, to Defendant Caffery-Saloom Retail LLC ("Caffery-Saloom"). (Doc. 1-1 at ¶ 21.) Southwest Property remained as property manager after the sale. (Doc. 1-1 at ¶ 22.)

Due to Defendants's alleged failure to replace Winn-Dixie in the Shopping Center, K&B mailed correspondence to them seeking to invoke the default provisions of the Lease. (Doc. 1-1 at ¶ 23-24.) According to the complaint, "Defendants notified [K&B] that they declined to repay [K&B] for its overpayment of rents during the violation period." (Doc. 1-1 at ¶ 28.) K& B subsequently notified Defendants of its intent not to renew its option on the Lease, meaning that it expired on July 31, 2016. (Doc. 1-1 at ¶ 29.)

K&B brings the instant diversity action against Caffery-Saloom, Southwest Property, and American National. K&B asserts that: (1) Defendants breached their contractual obligations in failing to replace Winn-Dixie with a comparable supermarket grocery store during the term of K&B's lease; (2) Defendants' actions caused K&B to suffer damages; and (3) Defendants "are liable and responsible to K&B for its damages, losses and overpayments of rent as a result of Defendants' acts, breeches of contractual obligations and conduct, and any other fault or negligence proven at trial." (Doc. 1-1 at ¶¶ 33-35.)

Each Defendant has filed an answer to the complaint. (Docs. 5, 6, and 7.) The Court issued a Scheduling Order which, *inter alia*, set the deadline for joinder of parties and amendment of pleadings on September 7, 2016. (Doc. 12 at p. 2.) On

October 12, 2016, Southwest Property moved to dismiss all claims asserted against it pursuant to Rule 12(6)(b). (Doc. 15.)

## *II. Discussion*

### *A. Applicable Standard of Review*

K&B contends that Southwest Property's Rule 12(b)(6) motion to dismiss was untimely filed since Southwest Property has already answered the complaint. (Doc. 24 at pp. 5-6.) K&B concedes, however, that the Court has discretion to consider the motion as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. 24 at p. 6). Southwest Property agrees in its reply brief that the Court should treat the motion pursuant to Rule 12(c). (Doc. 28 at p. 2.)

A district court may treat an untimely Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings based on failure to state a claim. See *PHI, Inc. v. Office & Professional Employees Intern. Union*, 624 F. Supp. 2d 548, 551–52 (W.D. La. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999)). Although Southwest Property's Rule 12(b)(6) motion was untimely filed, the Court will construe it as a Rule 12(c) motion for judgment on the pleadings. Regardless of how Southwest Property's motion is characterized, this distinction does not affect the

Court's legal analysis because the standards for motions under Rule 12(b)(6) and 12(c) are identical. *Jones*, 188 F.3d at 324.

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). The court must accept all well-pleaded facts set forth in the complaint as true, and it must view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Conclusory allegations and unwarranted deductions of fact, however, are not accepted as true. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). In addition, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," *Id. at 555,* and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In considering a Rule 12(b)(6) motion, a district court generally must limit itself to the factual allegations stated in the complaint as well as any documents attached to or referenced in the complaint. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). A court also may permissibly refer to matters of public record. *Cinel v. Connick*, 15 F.3d 1338, 1343 fn.6 (5th Cir. 1994); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("[T]he district court took appropriate judicial notice of publicly-available documents and transcripts . . . which were matters of public record directly relevant to the issue at hand.").

B.     *Analysis*

Southwest Property contends in its motion to dismiss that: (1) K&B has failed to allege any specific facts that would give rise to a plausible claim for relief against Southwest Property under a theory of breach of contract; (2) K&B has failed to allege that Southwest Property and K&B had any contractual relationship obligating Southwest Property to notify K&B of Winn-Dixie's closure, which occurred five years before Southwest Property became a property manager; and (3) the general allegations raised against the Defendants relate to obligations between the parties to the Lease with K&B, which does not include Southwest Property. (Doc. 15-1 at pp. 4-10.)

A review of the complaint reveals that Article 20 of the Lease provides the sole basis for K&G's remedy against Southwest Property. (Doc. 24-1 at p. 30.) In Louisiana, however, "no action for breach of contract may lie in the absence of privity of contract between the parties." *Pearl River Basin Land & Dev. Co. v. State of Louisiana,* 29 So. 3d 589, 593 (La. App. 1 Cir. 2009). K&B acknowledges that no privity of contract exists between it and Southwest Property under the Lease. (Doc. 24 at p. 6.) Without Southwest Property being a party to the Lease, K&B can point to no provision in the Lease that Southwest Property violated and cannot otherwise avail itself to the liquidated damages remedy in the Lease. K&B, therefore, cannot

state a plausible claim in its complaint sounding in contract against Southwest Property.

Southwest Property next contends that, while referencing the words "fault" and "negligence" in the last numbered paragraph of its complaint, K&B does not specifically allege any tort claims against Southwest Property. (Doc. 15-1 at p. 10.) K&B counters that Southwest Property, as property manager and keeper of the Shopping Center, breached its duties and obligations owed to K&B by: (1) failing to notify Plaintiff in writing that Winn Dixie had ceased operations; and (2) failing to replace Winn-Dixie with a comparable store. (Doc. 24 at p. 6-7.) K&B asserts that such allegations are sufficient to state a tort claim against Southwest Property. (Doc. 24 at p. 7.)

Upon careful review of the complaint, the undersigned concludes that K&B has failed to plead any facts that would impose any legal duty on Southwest Property under the Lease to notify K&B of Winn Dixie's closure, which occurred five years before Southwest Property became property manager of the Shopping Center. K&B likewise cites no legal authority to support any tort claims against Southwest Property. K&B, therefore, has failed to assert any plausible tort claims against Southwest Property in the complaint.

K&B seeks, in the alternative, leave to amend the complaint in light of recent discovery obtained on September 6, 2016, one day before the deadline expired for filing amendments under the operative Scheduling Order. (Doc. 24 at pp. 13-14.) K&B references a state court foreclosure proceeding against Caffery Center, which included an order dated April 27, 2010, appointing Southwest Property as keeper of the Shopping Center. K&B also identifies a management agreement, dated April 27, 2010, between Southwest Property and American National. (Doc. 24 at p. 14.) K&B contends that the recently discovered information reveals that Southwest Property had agreed in 2010 to market vacant space in the Shopping Center and that it failed to execute that duty with regard to replacing Winn-Dixie with a comparable supermarket. (Doc. 24 at p. 14.)

Southwest Property contends that no amendment by K&B would cure the complaint's deficiencies. (Doc. 28 at pp. 5-6.) Because the deadline to amend the complaint expired on September 7, 2016, Southwest Property contends that any attempt to amend the complaint now would unduly delay this case. (Doc. 28 at p. 6.) According to Southwest Property, any amendment would also be futile because: (1) Southwest's role as the property manager and keeper of the Shopping Center does not make Southwest Property a party to the Lease or liable to K&B for any obligation

under the Lease; and (2) the management agreement was entered into in 2010, five years after Winn-Dixie ceased its operations in the premises and does not include K&B as a party. (Doc. 28 at pp. 7-9.)

The undersigned agrees with Southwest Property that any attempt to amend the complaint would unduly delay this case and ultimately would be futile. K&B pled in the complaint that Southwest Property became the property manager of the Shopping Center on April 27, 2010. (Doc. 1-1 at ¶ 18.) K&B, therefore, was aware of Southwest Property's role as of the filing date of the complaint and have decided to wait until after expiration of the September 7, 2017 deadline to seek leave to amend with new allegations and theories of recovery.[1] Allowing K&B to amend their complaint would operate to unduly delay this case.

In addition, any amendment would be futile. As discussed above, the remedy sought by K&B is based on the terms of the Lease to which Southwest Property is not a party. Even when considering the April 27, 2010 Order by the state court and the property management agreement, Southwest Property's status as the keeper of the

---

[1] During oral argument, counsel for K&B speculated that Southwest Property, as the premises' keeper, may have collected rent and kept some of it from the owner of the Shopping Center. (Oral Argument Transcript at p. 12.) However, K&B made no allegations in the complaint alluding to Southwest Property withholding such rent payments. K&B would have no remedy for any such payments under the property management agreement as it is not a party to that agreement.

Shopping Center starting on April 27, 2010 confers no duty on its part to perform any obligations under the Lease.[2] Furthermore, the property management agreement between Southwest Property and American National does not give rise to any legal claim by K&B against Southwest Property. This agreement was entered into five years after Winn-Dixie ceased its operations in the Shopping Center, and K&B fails to show how this agreement would trigger any duty or obligation by Southwest Property to K&B.

### III. Conclusion

Based on the foregoing reasons, the undersigned RECOMMENDS that Southwest Property's Motion to Dismiss (Doc. 15) be GRANTED and that K&B's claims against Southwest Property be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed .R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days

---

[2] Louisiana Revised Statute § 9:5138 provides in pertinent that "[t]he keeper shall perform his duties as a prudent administrator, and shall not be liable to the owner of the seized property, or to any other person for any financial loss or damage claimed to have been suffered by reason of the management of the property by the keeper acting as a prudent administrator." *Louisiana Gaming Corp. v. JDH Limited, L.L.C.*, 736 So. 2d 940, 941 (La. App. 2 Cir. 1999) (citing LSA-R.S. 9:5138).

after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within FOURTEEN (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 27th day of January, 2017.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE