# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

K&B LOUISIANA CORPORATION

versus

CAFFERY-SALOOM RETAIL, LLC, ET AL.

Civil Action No. 16-0503

Magistrate Judge Carol B. Whitehurst

BY CONSENT OF THE PARTIES

## MEMORANDUM RULING

Before the Court are the following motions: (1) Motion For Summary Judgment filed by defendant, Caffery-Saloom Retail, LLC ("Caffery-Saloom") [Rec. Doc. 57];[1] Motion for Summary Judgment filed by defendant American National Insurance Company ("ANICO") [Rec. Doc. 54];[2] Motion for Summary Judgment, or alternatively, for Partial Summary Judgment filed by plaintiff, K&B Louisiana Corporation d/b/a Rite Aid [Rec. Doc. 60];[3] and ANICOS's Rule 37(c) Motion for Order Compelling Opposing Party to Pay Attorney's Fees and Expenses [Rec. Doc. 55].[4] For the following reasons, the motions for summary judgment filed by Caffery-

---

[1] K&B opposes Caffery-Saloom's motion [Rec. Doc. 73], and Caffery-Saloom filed a reply brief [Rec. Doc. 82].

[2] K&B opposes ANICO's motion [Rec. Doc. 66].

[3] Caffery-Saloom opposes K&B's motion [Rec.Doc. 76], as does ANICO [Rec. Doc. 76]. K&B filed a reply to both opposition briefs [Rec. Doc. 80].

[4] K&B opposes ANICO's motion [Rec.Doc. 67], and ANICO filed a reply brief [Rec. Doc. 75.]

Saloom and ANICO [Rec. Docs. 54 & 57] are GRANTED and the claims asserted by K&B against Caffery-Saloom and ANICO are DENIED AND DISMISSED WITH PREJUDICE. Because K&B's claims are dismissed, K&B's motion for summary judgment [Rec. Doc. 60] is DENIED AS MOOT. ANICO's motion for attorneys' fees [Rec. Doc. 55] is DENIED for the reasons stated herein.

## *Factual Background and Procedural History*

The instant dispute arises out of an alleged co-tenancy violation contained in a lease agreement between K&B and Caffery Center, entered into on January 23, 1995. The following facts are undisputed:

- On January 23, 1995, K&B entered into a written lease with Caffery Center, LLC for drug store space in the Caffery Center Shopping Center ("Shopping Center") located at 4510 Ambassador Caffery Parkway, Lafayette, Louisiana.

- The lease contains the following provisions:

    Article 2
    Conditions Precedent and Continuing

    B.  Lessor [Caffery Center] represents to Lessee [K&B] that Lessor has entered into a lease with the following named concern: with Winn-Dixie Louisiana, Inc. (Winn-Dixie) for a minimum of 50,000 square feet for a supermarket grocery store . . . The lease to Winn-Dixie being for a minimum of 20 years . ... The continued operation, lease and payment of rent for its store in the Shopping Center by Winn-Dixie is part of the consideration to induce Lessee to lease and pay rent for its store, as hereinafter described, on the Leased premises as a part of the Shopping

2

Center. Accordingly, should Winn-Dixie fail or cease to operate or lease and pay rent for its store in the Shopping Center during the Lease Term as hereinafter set out, Lessee shall have the right and privilege of (a) cancelling [sic] this Lease and terminating all of its obligations hereunder at any time thereafter upon written notice by Lessee to Lessor, and such cancellation and termination shall be effective ninety (90) days after the mailing of such written notice; or (b) **invoking the privileges of Article 20 herein**. In the event Lessee exercises Lessee's privilege of cancelling this Lease and terminating all its obligations hereunder, Lessee shall vacate the premises and return same to Lessor within one hundred and eighty (180) days of the mailing of such written notice. The above notwithstanding, in the event Winn-Dixie should fail or cease to operate or lease and pay rent for its store in the Shopping Center, Lessor shall have a period of six (6) months to replace Winn-Dixie with a comparable supermarket grocery store of comparable size, net worth, and reputation prior to Lessee invoking its rights and privileges as above. It is specifically understood that Lessor shall be obligated to immediately notify Lessee in writing should Winn-Dixie fail or cease to operate or to lease and pay rent for such a store in the Shopping Center during the primary term of this Lease, but any failure of Lessor to notify Lessee thereof shall in no way deprive Lessee of its privilege of cancelling this Lease and termination all of its obligations hereunder, or **invoking the privileges of Article 20 herein**.[5]

[ . . . ]

## Article 20
## Default

B.    In the event of default at any time during the Lease Term, in any of the representations, warranties, covenants or agreements herein

---

[5] *See* Lease, attached as Exhibit 1 to Caffery-Saloom's motion for summary judgment [Doc. 73], at Article 2 (emphasis added).

undertaken by Lessor, Lessee may enforce the performance of this Lease by any mode provided by law and/or may terminate Lessee's obligations hereunder, at its option, if such default continues for a period of thirty (30) days after Lessor has received notice of such default. . . . Without in any way waiving, limiting, or restricting Lessee's other remedies or options contained in this Lease, in the event of a violation of or the failure to Lessor or anyone else to observe the terms hereof, the monthly basic rental set forth in Article 6(A) 1 hereof and the percent of additional rental set forth in Article 6(A) 2 hereof, shall be payable at half of the stipulated amounts therein stated for the period from the date of such default until Lessor cures any such violation or failure to observe the said provisions, which reduction shall be considered as liquidated damages for the periods during which any such violation may have existed. . . .[6]

- K&B opened its pharmacy in the Shopping Center for business in July of 1996. The terms of the Lease state that the Lease Term began 30 days after K&B opened its store for business – so approximately August 1, 1996 -- and lasted for a period of 20 years, until approximately August 1, 2016.

- The Lease provided for a twenty-year lease term with six consecutive five-year renewal options.

- Dean Babin was the manager of the K&B store from the time of its opening until May 2006.

- At some time during the lease term between K&B and Caffery Center, Winn-Dixie also occupied rental space in the Shopping Center. However, Winn-Dixie closed and ceased operations during the lease term between K&B and Caffery Center.[7]

---

[6] *Id.* at Article 20.

[7] Defendants asserts that Winn-Dixie ceased operations and abandoned the store on June 21, 2000. In support of this fact, defendants reference the corporate deposition of K&B, given by Linda Brubeck on June 27, 2017, wherein Ms. Brubeck reviewed and answered questions

- Gregory Reggie, manager of Caffery Center, LLC, attests that he sent a memo to tenants, including K&B, on November 22, 2000, confirming that Winn-Dixie had closed.

- On February 21, 2005, Winn-Dixie filed for Chapter 11 bankruptcy protection, and on February 23, 2005, the bankruptcy court authorized Winn-Dixie to reject 148 store leases, including Winn-Dixie's lease with Caffery Center, LLC. Winn Dixie stopped paying rent for its store in the Shopping Center in February 2005.

- On September 13, 2005, K&B approved the leasing of the vacant Winn-Dixie to Women's and Childrens' Hospital, Inc.

- In 2009, ANICO, which was Caffery Center's lender, commenced foreclosure proceedings against Caffery Center, the original owner and lessor of the Shopping Center.

- In April 2012, ANICO acquired full title to the Shopping Center and assumed the Lease with K&B Louisiana.

- At some point in 2013, K&B, now doing business in Louisiana as "Rite Aid," conducted a "Co-Tenancy Violations Review Project" and determined that the K&B store in Caffery Center violated the co-tenancy provisions of the lease between K&B and Caffery Center as a result of Winn-Dixie's closure.

- On June 18, 2014, ANICO sold the Shopping Center to Caffery-Saloom, which assumed the Lease with K&B. Caffery-Saloom currently owns the Shopping Center.

- Plaintiff, through counsel, sent ANICO and Southwest Property Management, Inc. a written demand on December 17, 2015, invoking the provisions of Art. 20 of the lease, as follows:

---

concerning the March 2013 Co-Tenancy Violations Project, prepared by K&B, which notes that K&B closed its Caffery Center store on June 21, 2000.

 K&B argues that the date Winn-Dixie ceased operations is irrelevant, as Winn-Dixie did not stop paying rent for its location in the Shopping Center until approximately February 2005.

> . . . . Pursuant to the terms of the lease for this location, Rite Aid is hereby invoking Article 20 of the lease based upon the lessor's default of Article 2, paragraph B.
>
> As set forth in Article 2, paragraph B, as amended effective November 3, 1995, the Lessor's November 7, 1994 lease with grocery store Winn-Dixie for at least 50,000 square feet of space in the Shopping Center is part of Rite Aid's consideration for its rental payments to the Lessor. The Lessor obligated itself to maintain at least a 20-year lease with Winn-Dixie through November 7, 2014 and, in the event that Winn-Dixie did not complete its 20-year lease, the Lessor obligated itself to replace Winn-Dixie within six (6) months with a comparable supermarket grocery store. It is Ride Aid's understanding that Winn-Dixie ceased occupancy of the Shopping Center some time in 2005, but the Lessor has failed to replace Winn-Dixie with a comparable supermarket grocery store in breach of Article 12, paragraph B.

- K&B did not send the December 17, 2015 letter by certified mail.

- K&B acknowledged that the only notice it sent of its intent to invoke the provisions of Art. 20 of the Lease was its counsel's letter dated December 17, 2015.

- K&B paid the full monthly rental amount from 2000 to the expiration of the Lease on July 31, 2016.

On March 9, 2016, K&B filed suit against Caffery-Saloom, ANICO, and Southwest Property Management, Inc. in the 15th Judicial District Court for the Parish of Lafayette, seeking various damages for violations of the Lease agreement. The defendants removed the matter to this Court on April 15, 2016. In the pending motions, Caffery-Saloom and ANICO seek dismissal of the plaintiff's claims on

grounds the claims are prescribed and on grounds the lawsuit is filed against improper parties. ANICO seeks attorneys' fees as a sanction for K&B's failure to admit certain facts related to the prescription issue during discovery.

### *Summary Judgment Standard*

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed R. Civ P. 56(c); *Brown v. City of Houston*, 337 F.3d 539, 540–41 (5th Cir.2003). A material fact is a fact which, under applicable law, may alter the outcome of the suit. *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir.2001). A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir.2013). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Prods. Liab. Litig.*, 501 F.Supp.2d 776, 781 (E.D.La.2007). When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir.2004). The non-moving party must then go beyond the pleadings and "identify specific evidence

in the record and ... articulate the precise manner in which that evidence supports his or her claim." *Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir.2008). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002).

*Analysis*

The instant motions are filed by Caffery-Saloom – which entity was not the lessor under the lease at the time the events arising herein occurred – and ANICO. Both entities argue K&B's claims should be dismissed for a number of reasons, including that any claim for breach of contract has prescribed. This Court agrees.

K&B's claims against the defendants for the return of rental payments are subject to a ten-year prescriptive period. *See* La. Civ. Code Art. 3499 ("Unless otherwise prescribed by legislation, a personal action is subject to a liberative prescription of ten years."). *See also Martin v. Exxon Mobil Corp.*, 48 So.3d 234, 256 ("The prescriptive period on a personal action, such as an action for breach of a lease contract, is 10 years."). The ten-year prescriptive period for the breach of a contract begins to run on the "the date the contract is allegedly breached." *Plainview Area Ass'n, Inc. v. State, Dep't of Transp. & Dev.*, 832 So.2d 1172, 1174 (La. App. 3rd Cir.

2002), *citing Dauterive Contractors, Inc. v. Landry and Watkins*, 811 So.2d 1242 (La. App. 3rd Cir. 2002).

Caffery-Saloom and ANICO argue that Winn-Dixie closed on June 21, 2000, and that the lease provided that the lessor had six months to find a comparable replacement tenant to lease the space. K&B's corporate representative testified that K&B completed a "co-tenancy violation review project" in 2013, and as part of that project, K&B's internal records indicate that "Winn-Dixie closed 6/21/2000." Ergo, the defendants argue K&B's right of action for breach of contract prescribed ten years after December 21, 2000, which would have been December 21, 2010.

Alternatively, Caffery-Saloom and ANICO argue the record shows that on November 22, 2000, the Shopping Center property manager, Gregory Reggie, informed all the Shopping Center tenants -- including K&B – that Winn-Dixie had closed and the lessor's attempts to convince Winn-Dixie to reopen had been unsuccessful. Under these facts, K&B's cause of action for breach of contract began to run six months from November 22, 2000, which would be May 22, 2001. The ten-year prescriptive period would therefore have ended on May 22, 2011.

K&B disputes that it received Mr. Reggie's letter. K&B also disputes that Winn-Dixie closed in June 2000, arguing that the evidence in this case doesn't support such a finding, but providing no evidence of its own to show when Winn-

2002), *citing Dauterive Contractors, Inc. v. Landry and Watkins*, 811 So.2d 1242 (La. App. 3rd Cir. 2002).

Caffery-Saloom and ANICO argue that Winn-Dixie closed on June 21, 2000, and that the lease provided that the lessor had six months to find a comparable replacement tenant to lease the space. K&B's corporate representative testified that K&B completed a "co-tenancy violation review project" in 2013, and as part of that project, K&B's internal records indicate that "Winn-Dixie closed 6/21/2000." Ergo, the defendants argue K&B's right of action for breach of contract prescribed ten years after December 21, 2000, which would have been December 21, 2010.

Alternatively, Caffery-Saloom and ANICO argue the record shows that on November 22, 2000, the Shopping Center property manager, Gregory Reggie, informed all the Shopping Center tenants -- including K&B – that Winn-Dixie had closed and the lessor's attempts to convince Winn-Dixie to reopen had been unsuccessful. Under these facts, K&B's cause of action for breach of contract began to run six months from November 22, 2000, which would be May 22, 2001. The ten-year prescriptive period would therefore have ended on May 22, 2011.

K&B disputes that it received Mr. Reggie's letter. K&B also disputes that Winn-Dixie closed in June 2000, arguing that the evidence in this case doesn't support such a finding, but providing no evidence of its own to show when Winn-

2002), *citing Dauterive Contractors, Inc. v. Landry and Watkins*, 811 So.2d 1242 (La. App. 3rd Cir. 2002).

Caffery-Saloom and ANICO argue that Winn-Dixie closed on June 21, 2000, and that the lease provided that the lessor had six months to find a comparable replacement tenant to lease the space. K&B's corporate representative testified that K&B completed a "co-tenancy violation review project" in 2013, and as part of that project, K&B's internal records indicate that "Winn-Dixie closed 6/21/2000." Ergo, the defendants argue K&B's right of action for breach of contract prescribed ten years after December 21, 2000, which would have been December 21, 2010.

Alternatively, Caffery-Saloom and ANICO argue the record shows that on November 22, 2000, the Shopping Center property manager, Gregory Reggie, informed all the Shopping Center tenants -- including K&B – that Winn-Dixie had closed and the lessor's attempts to convince Winn-Dixie to reopen had been unsuccessful. Under these facts, K&B's cause of action for breach of contract began to run six months from November 22, 2000, which would be May 22, 2001. The ten-year prescriptive period would therefore have ended on May 22, 2011.

K&B disputes that it received Mr. Reggie's letter. K&B also disputes that Winn-Dixie closed in June 2000, arguing that the evidence in this case doesn't support such a finding, but providing no evidence of its own to show when Winn-

Dixie actually closed its doors and ceased operations. Nevertheless, the Court finds that the undisputed evidence supports that K&B knew or should have known of Winn-Dixie's closure by June, 2000.

Even assuming that K&B did not have knowledge of Winn-Dixie's closure in June 2000, however, resolution of the prescription issue does not mandate a determination as to whether Winn-Dixie actually closed it doors on June 21, 2000, because K&B has admitted - in response to a request for admission propounded by ANICO – that it had knowledge that Winn-Dixie closed its store in August 2005. In its Request for Admission No. 1, ANICO asked K&B Louisiana to admit that "K&B/Rite Aid knew in 2000 that Winn-Dixie had closed its store in the Caffery Center and had ceased operations." K&B Louisiana responded:

> Denied. Plaintiff has made reasonable inquiry into this Request, and the information it knows or can readily obtain reflects Plaintiff's earliest awareness of the closure of Winn-Dixie in the Caffery Center as August 31, 2005.

Thus, it is undisputed that K&B was aware of the closure of Winn-Dixie in the Caffery Center as of August 31, 2005. At the very latest, therefore, K&B's cause of action for breach of contract began to run six months from August 31, 2005, which would be the end of February, 2006. The ten-year prescriptive period would therefore have ended in late February, 2016. The record shows K&B sent its demand letter to

10

Caffery Saloom on December 17, 2015, and it filed suit on March 9, 2016, after its claim prescribed. Therefore, even if this Court were to assume that K&B did not have notice that Winn-Dixie ceased to operate in the Caffery Shopping Center until August 2005, as K&B has admitted, K&B nevertheless failed to invoke Articles 2 and 20 of the Lease within the applicable prescriptive period, and the date that K&B filed suit was beyond the prescriptive period.

K&B's argument that the provisions of Article 20 operate "automatically," and that K&B was under no obligation to put Caffery Center (Caffery-Saloom's predecessor) on notice of default, is unpersuasive. The clear language of the lease states that, in the event the Lessor -- here, Caffery Center – violates a lease provision, K&B had one of two options: either (1) cancel the lease, or (2) invoke the provisions of Article 20. Under Louisiana law,

> The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ.Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual

significance."

*Prejean v. Guillory*, 38 So. 3d 274, 279 (La. 2010) (internal citations omitted).

Merriam-Webster defines the word "invoke" as follows: (1) to petition for help or support; (2) to appeal to or cite as authority; (3) to call forth by incantation: conjure; (4) to make an earnest request for. *Invoke*, MERRIAM-WEBSTER (10th ed. 29183). Black's Law Dictionary defines the word "invocation" as "the act of calling upon for authority or justification" and "the act of enforcing or using a legal right." BLACK'S LAW DICTIONARY 833 (7th ed. 1999). The word "petition" is defined as "to make a request to" and "to make a request; especially, to make a formal written request." *Petition*, Merriam-Webster (10th ed. 1983). In both instances, the ordinary meaning of the word "invoke" requires the person "invoking" to take some action to bring about the desired result. Thus, when giving the word "invoke" its plain and ordinary meaning within the contract of lease, the undersigned concludes that *some action* on the part of K&B was required in order to "invoke" the provisions of Article 20 in the event of a breach of the lease.

Here, K&B did not take any action to invoke the default provisions of Article 20 until December 17, 2015, and in fact, actually paid the full amount of the rent for a period of more than 15 years after Winn-Dixie left the Shopping Center. Significantly, in its December 17, 2015 letter to Caffery-Saloom, K&B – doing

business in Louisiana as Rite Aid – states "[b]ecause Rite Aid intends to exercise its upcoming renewal option, Rite Aid is hereby invoking Article 20." Thus, when K&B actually made its intentions clear, it specifically – *and in writing* – invoked the provisions of Article 20. Under these circumstances, the undersigned concludes it is not reasonable for K&B to argue that its current invocation of Article 20 – in the face of 15 years of continuing to pay the full rent while knowing that Winn-Dixie was no longer operating a store in the Shopping Center – is unreasonable, and any attempt to now invoke the default provisions of Article 20 is clearly prescribed.

K&B's argument that it is entitled to reimbursement of the amounts it paid under Article 2299 of the Louisiana Civil Code, is similarly misplaced. Article 2299 states:

> A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it.

La. Civ. C. art. 2299 (West 2018). This Court concludes, however, that Article 2299 is not applicable in the instant case. Because K&B did not <u>invoke</u> the provisions of Article 20, the full rental payments it made were due and owing at the time K&B paid them. Thus, this argument is without merit.

Because this Court concludes K&B's claims against Caffery-Saloom and ANICO are prescribed, this Court need not address the alternative issues raised by the

moving parties and makes no finding with respect to these issues.

   **2.     ANICOS's Rule 37(c) Motion for Order Compelling Opposing Party
           to Pay Attorney's Fees and Expenses [Rec. Doc. 55]**

In its answer to the plaintiffs' claims in this lawsuit, ANICO pled certain defenses, among them, the defense that the claim against it had been extinguished by the prescription of ten years. ANICO propounded discovery and Requests for Admissions upon K&B on August 22, 2016. ANICO argues that the Requests for Admissions sent by ANICO to K&B sought information regarding K&B's knowledge of Winn-Dixie's closure, and the date on which such information was obtained by K&B. ANICO argues that on September 29, 2016, K&B served on ANICO responses to the Requests for Admissions, denying specifically the matters on which an admission was requested. ANICO argues that K&B's discovery responses, including their responses to the Requests for Admissions, were evasive and misleading, and that ANICO was therefore required to engage in arduous discovery and depositions, Thereafter, on November 30, 2016, ANICO argues it made demand on K&B to dismiss the claims against it or face sanctions, but that K&B refused to do so. Discovery and investigation proceeded, revealing undisputed facts which form the basis of ANICO's Motion for Summary Judgment, including, but not limited to, the fact that K&B's claims are prescribed. In its motion, ANICO argues that plaintiffs

should be cast in judgment for the entirety of ANICO's attorney's fees, expenses, and costs in defending this ongoing litigation, as well as for all costs of these proceedings. ANICO avers that if this motion is granted, it will submit an Affidavit which sets forth the amount of attorney's fees and expenses incurred.

> Rule 37(c)(2) of the Federal Rules of Civil Procedure provides:
>
> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
> A. The request was held objectionable under Rule 36(A);
>
> B. The admission sought was of no substantial importance;
>
> C. The party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
>
> D. There was other good reason for failure to admit.

Fed.R.Civ.P. 37(c)(2).

As part of the requests propounded on K&B on August 22, 2016, ANICO's Request for Admission No. 1 asked that K&B admit "K&B/Rite Aid knew in 2000 that Winn-Dixie had closed its store in the Caffery Center and had ceased operations." K&B sent its responses to ANICO's Requests for Admissions on September 29, 2016, in which K&B denied Request for Admission No. 1. Thereafter,

K&B amended its denial as follows:

> Denied. Plaintiff has made reasonable inquiry into this Request, and the information it knows or can readily obtain reflects Plaintiff's earliest awareness of the closure of Winn-Dixie in the Caffery Center as August 31, 2005.

K&B's corporate spokeswoman, Linda Brubeck, testified during her deposition that K&B "searched every person, department, document" that they could find, and that K&B provided everything to ANICO in discovery.

ANICO argues it took the deposition of Dean Babin on August 25, 2017. Mr. Babin testified that he was the store manager of K&B from 1996 until 2006. Mr. Babin testified further that the closure of Winn-Dixie was obvious due to signage above the store, and that he noticed the store being closed when he attempted to go into the Winn-Dixie store to buy lunch, only to find that the store was not in operation. ANICO argues that Dean Babin was not asked to assist with responding to ANICO's Requests for Admissions, despite the fact that Mr. Babin was the store manager at the time of Winn Dixie's closure, and would therefore be the person most able to provide that information. ANICO also argues it discovered a November 22, 2000 memorandum, sent by Caffery Center property manager Gregory Reggie to all tenants of Caffery Center (including K&B), which confirmed the fact that Winn-Dixie had closed and informed of his efforts to get it to reopen or find a replacement supermarket grocery store.

ANICO argues that K&B actually knew Winn-Dixie closed in June 2000, but

16

failed to admit that fact, forcing ANICO to engage in costly discovery. In response, however, K&B argues the requested fact is "inconsequential" for three reasons, to wit: (1) ANICO's prescription claim is "misguided;" (2) assuming ANICO's prescription claim is correct, K&B's claims would be prescribed based on the facts it *did* admit, because K&B admitted that it discovered the facts surrounding Winn-Dixie's closure by August 2005, more than ten years before the filing of this action, therefore K&B's claim would be prescribed based on the facts K&B did admit; and (3) ANICOs' request was of "no consequence" because the triggering event for the reduction of rent payable by K&B was the fact that Winn-Dixie ceased leasing and paying rent, which ANICO admits did not occur until 2005. The only exception argued here is that the admission sought was of no substantial importance.

Although the undersigned does not condone the failure of a party to produce responsive documents or admit facts that should plainly be admitted based on the facts known to that party, in the instant case, the undersigned concludes sanctions are not warranted. Here, the requested fact was of no substantial importance to the Court in determining that K&B's claims are prescribed. While the court finds that the undisputed evidence supports that K&B knew or should have known of Winn-Dixie's closure by June, 2000, K&B's claims are still prescribed based on the facts it *did* admit-that it had knowledge that Winn-Dixie closed its store in August 2005. For this reason, the Court concludes that sanctions are not warranted.

*Conclusion*

Thus, for the foregoing reasons, **IT IS ORDERED** that the motions for summary judgment filed by Caffery-Saloom and ANICO are GRANTED and the claims asserted by K&B against Caffery-Saloom and ANICO are DENIED AND DISMISSED WITH PREJUDICE. Because K&B's claims are dismissed, K&B's motion for summary judgment is DENIED AS MOOT. ANICO's motion for attorneys' fees is DENIED.

Thus done and signed this 18th day of May, 2018 at Lafayette, Louisiana.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE